IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STEPHANIE R. HINTON                                                           PLAINTIFF

VS.                                                      CIVIL ACTION NO. 3:07-CV-730-JCS

EAGLE ONE LOGISTICS AND                                                    DEFENDANTS
LURENZA CLINCY, JR.

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Defendants' motion for summary judgment, to which the Plaintiff has failed to respond. The parties have consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, for all proceedings and final judgment to be entered by a United States Magistrate Judge. The Court, for reasons explained in this memorandum opinion and order, finds that when the merits of the case are considered, the Defendants are entitled to summary judgment, and the case should be dismissed with prejudice.

I. Plaintiff's Claims

Plaintiff filed her complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, alleging that the Defendants are liable to her for sexual harassment, retaliation, and sex discrimination. (Document Number 1, Complaint at 3.) Plaintiff alleges that she suffered and continues to suffer extreme emotional distress and anxiety as a result of the Defendants' actions. (Id.) In the opening paragraph of her Complaint, Plaintiff alleges state law claims for the torts of malicious interference with employment relations and deliberate infliction of mental distress. (Complaint at 1.) Based upon the theory of respondeat superior, Plaintiff also alleges that Eagle One is liable for any and all acts of negligence committed by Clincy. (Complaint at 2.) She further alleges actual damages because of lost

income and asks for punitive damages.  Id.

## II. Facts and Procedural Posture of the Case

According to her complaint, Plaintiff became employed by Defendant Eagle One Logistics on or about November 26, 2005.  On December 29, 2005, she was promoted to Assistant Supervisor to the Warehouse Manager, Defendant Lurenza Clincy, Jr.  She alleges that immediately after her promotion, Clincy began to sexually harass her severely.  (Complaint at 2.)  According to her EEOC affidavit (Document Number 27-8), Clincy began sexually harassing her on January 14, 2006.  Plaintiff alleges that the sexual harassment consisted of "continued expressions of sexual interest in plaintiff, making sexual overtures while attempting to make conversation with plaintiff at her desk."  (Complaint at 3.)   Plaintiff alleges that she made two complaints about Clincy's conduct in telephone conversations with Chad Hasley , Eagle One Logistics's Human Resource Manager at its headquarters located in Fort Smith, Arkansas, on or about January 25, 2006, and again on January 30, 2006.  Thereafter, on February 2, 2006, plaintiff received her termination notice from the company.  Thus, in her complaint Plaintiff alleges that Clincy sexually harassed her at most from December 29, 2005, to February 2, 2006, just over one month.[1]

Plaintiff filed an EEOC charge alleging discrimination based upon sexual harassment and retaliation on or about February 7, 2006.  The EEOC issued a "Right to Sue" letter on September 26, 2007.  (Exhibit B to Plaintiff's Complaint.)  Plaintiff filed this action on December 14, 2007.

The Court held a telephonic case management conference on May 19, 2008, and

---

[1]Based upon her EEOC affidavit, the sexual harassment lasted from January 14, 2006, to February 2, 2006, the date she was discharged.

subsequently entered a scheduling order. Thereafter, according to the docket sheet, the parties pursued discovery. On October 17, 2008, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, for all proceedings and final judgment to be entered by a United States Magistrate Judge. (Document Number 17, 10/17/2008.) Subsequently, a new scheduling order was entered, setting a revised discovery deadline of March 23, 2009, and a motion filing deadline of April 6, 2009, among other deadlines. Defendants filed a Motion to Compel Discovery Responses (Document Number 23) on March 16, 2009, which was granted as unopposed on April 3, 2009. In the April 3 Order, the Court directed the Plaintiff to respond to outstanding discovery requests by April 10, 2009. On April 6, 2009, the Defendants timely filed a Motion for Summary Judgment and accompanying Memorandum. (Document Numbers 27 and 28.) Thereafter, the Defendants filed a motion (Document Number 29) asking the Court to exclude certain evidence which the Plaintiff had failed to produce, as required by the Court's April 3 Order. The Plaintiff failed to respond to this motion. Furthermore, the Plaintiff failed to respond to the Motion for Summary Judgment by April 23, 2009, the ten day period for response as allowed by the Uniform Local Rules. On April 29, 2009 (Document Number 30), the Court issued an Order to Show Cause to the Plaintiff requiring her to show cause why she had not responded to the Motion for Summary Judgment and why an Order should not be entered granting the Motion for Summary Judgment and dismissing the case. That same day, the Plaintiff's Counsel responded to the Order to Show Cause, citing Plaintiff's injuries from a March 25 traffic accident and a resulting inability to communicate with the Plaintiff as reasons for the Plaintiff's failure to respond to the Motion for Summary Judgment. In the same filing, the Plaintiff's counsel requested an additional twenty days to respond to the Motion for Summary

Judgment. The Defendants opposed the request for additional time. (Document number 32.) After expiration of Plaintiff's time for rebuttal, the Court issued an Order on May 18, 2009, requiring a response to the Motion for Summary Judgment by May 22, 2009. Plaintiff failed to file any response to the Motion for Summary Judgment. Furthermore, on May 19, 2009, the Plaintiff's counsel filed a Motion to Withdraw and an Amended Motion to Withdraw showing proof of service upon the Plaintiff. (Document Numbers 34 and 35.) The Defendants responded to the Motion to Withdraw and the Amended Motion to Withdraw, stating that they did not oppose withdrawal by counsel, but opposed any proposed stay of the proceedings. (Document Number 37). On May 20, 2009, the Court issued an Order granting the Defendants' motion to exclude certain evidence, as the Plaintiff had failed to respond to the Motion, and advised the Plaintiff that her failure to cooperate in discovery or respond to an Order could result in the further exclusion of evidence or the dismissal of her case. (Document Number 36.) Considering the posture of the case, and the pending Motions to Withdraw filed by Plaintiff's counsel, the Court scheduled a status conference for June 17, 2009. In advance of the conference, the Court reviewed the pending motion for summary judgment and, for the reasons explained in this document, found that summary judgment should be granted based on the merits of the case.

### III. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-324. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When evaluating a summary judgment motion, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." Breen v. Texas A & M Univ., 485 F.3d 325, 331 (5th Cir. 2007). "If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case." Crump v. Masonite Corp., 2008 WL 3200669, *2 (S.D. Miss. Aug. 7, 2008)(Starrett, J.).

With regard to the non-moving party's responsibility at this juncture, the Fifth Circuit has stated that

> [t]his burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the*

> *absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* See Lujan [v. National Wildlife Federation, 497 U.S. 871, 888 (1990)](resolving actual disputes of material facts in favor of nonmoving party "is a world apart from 'assuming' that general averments embrace the 'specific facts' needed to sustain the complaint. . . . It will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege").

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis in original)(some citations omitted).

In cases where the Plaintiff has failed to respond to the Motion for Summary Judgment, the Fifth Circuit has declared that summary judgment may not be granted solely because of a default, stating

> [a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed.

Hetzel v. Bethlehem Steel Corp., 50 F.3d 360, 362 n.3 (5th Cir. 1995). Thus, if Eagle One and Clincy fail to establish the absence of a genuine issue of material fact regarding any of Plaintiff's claims, the Court may not grant the motion for summary judgment. A review of the Plaintiff's complaint and available competent evidence shows that summary judgment is proper in this case.

## IV. Discussion

The Defendants have moved for summary judgment as to all claims brought by the Plaintiff. The Court will address the claims in the following order: sexual harassment, retaliation, sex discrimination, malicious interference with employee relations, intentional infliction of emotional distress, and negligence based upon the theory of respondeat superior.

### A. Sexual Harassment

Title VII forbids employers to take actions on the basis of sex that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment." 42 U.S. C. § 2000e-2(a)(1). Sexual harassment is a form of discrimination prohibited under Title VII. See Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986); Ranel v. Gilley Enterprises-Louisiana Partnership, 2009 WL 1310879 (W.D. La. May 11, 2009). The Fifth Circuit, following the road map set forth in Burlington Industries, Inc. v. Eller, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), has explained the methodology that courts should employ to analyze all claims of supervisor sexual harassment cases under Title VII. Casiano v. AT&T Corp., 213 F.3d 278 (5th Cir. 2000). First, courts are required to determine whether the complaining employee has or has not suffered a "tangible employment action." Ellerth, 624 U.S. at 761-62 (tangible employment actions "require[] an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). "As opposed to retaliation, which occurs in response to a protected activity (such as filing a grievance), 'a tangible employment action is the result of the harassment itself.'" Chandler v. Mississippi Dep't of Corrections, 2008 WL 29086956 (S.D. Miss. Jul. 30, 2008)(Guirola, J.)(quoting Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512, 520 (5th Cir. 2001)). If the Court finds that a "tangible employment action" has occurred, then the case is analyzed as a "quid pro quo" claim. If, however, no "tangible employment action" is found, then the case is analyzed as a "hostile environment" claim. Casiano, 213 F.3d at 283.

Under a "hostile environment" claim, if an employee offers only circumstantial evidence to show discrimination, then the employee must first create a presumption of intentional

discrimination by establishing a *prima facie* case. Alvarado v. Texas Rangers, 492 F.3d 605, 611 (5th Cir. 2007). If the employee is successful, the employer must then respond by articulating a legitimate, nondiscriminatory reason for its actions. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). To state a claim for sexual harassment that created a hostile work environment, the Plaintiff must establish that (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition or privilege of employment. Ranel, 2009 WL 1310879, *2.[2]

The Ranel court explained the fourth prong of the test, whether the harassment affected a term, condition, or privilege of employment, stating as follows:

> Under a hostile work environment theory of sexual harassment, the plaintiff is not required to show that he suffered a tangible employment action, but that the conduct of the alleged harasser was severe or pervasive enough to alter a term or condition of his employment. See Burlington Indus., Inc. V. Ellerth, 524 U.S. 742, 752 (1998). . . . A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." Frank [v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003)]. Whether an environment is objectively hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 21-22. A "recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001)(internal quotes omitted).

Ranel, 2009 WL 1310879 at *2. Moreover, the Fifth Circuit has upheld a district

---

[2]The fifth element of the *prima facie* case, that the employer knew or should have known of the harassment and failed to take prompt remedial measures, is not utilized where the alleged harasser is the employer's supervisor. Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999).

court's finding that a plaintiff's failure to report offensive incidents to her employer made it "apparent that the nature of the physical contact and comments were not severe or pervasive themselves." Gibson v. Potter, 264 Fed. Appx. 397, 401 (5th Cir. 2008).

Under the framework set forth by Casiano, the Court must first determine whether the case is a "quid pro quo" claim or a "hostile environment" claim by analyzing whether the Plaintiff suffered a "tangible employment action" as a result of the alleged sexual harassment. Although the Plaintiff was fired, she was fired *after* she had complained to the Human Resource manager about Clincy's conduct. Furthermore, she was fired by Malcomb Driskill, the Regional Operations Manager, and not by Clincy, her direct supervisor, the alleged sexual harasser. Thus, her firing is not a result of the harassment itself, but, on its face, her firing goes toward supporting a claim of retaliation. Accordingly, the Court determines that her claim should be analyzed under the "hostile environment" or "hostile work environment" branch of the Casiano framework.

To establish a hostile work environment claim, the Plaintiff must show that the conduct of the supervisor constituted severe or pervasive sexual harassment, or was severe or pervasive enough to alter a term or condition of her employment. In her Complaint and other filings in the record, the Plaintiff outlines Clincy's alleged instances of sexual harassment. In her EEOC charge of discrimination attached to her Complaint, she stated that the sexual harassment began on January 14, 2006, and continued until she was terminated on February 2, 2006. (Document Number 1 at 5.) In her Complaint, Plaintiff alleges Clincy's harassment "consisted of continued expressions of sexual interest in plaintiff, making sexual overtures while attempting to make

conversation with plaintiff at her desk." Complaint at 3. In her EEOC Affidavit, Hinton states that Clincy would "have his hand on his private parts" and "sit at the end of my desk with his hands between his legs grabbing at his private area." (Document Number 27-8.) She also stated that Clincy would "make comments about my breast" and "ask me what size bra did I wear," as well as that she "had a nice chest." Id. She further alleged in her affidavit that Clincy said that her "ass was fitting in my pants." Id.

During a January 30, 2006, conversation with Eagle One's Human Resource Manager, she made general comments about Clincy's conduct, but did not delineate specific instances of sexually offensive conduct. (Transcript, Document Number 27-7.) In fact, it appears that the primary focus of her call to the Human Resource Manager was to inquire about the hiring of another secretary in her office, the new secretary's purpose, whether Hinton would be responsible for her on-the-job training, and whether the new secretary was intended to replace her. During the conversation, spanning over eight pages of transcription, Hinton also complained about Clincy's management of delivery routes, his management style, and his general rudeness to employees, including her. Only in passing did she complain about Clincy's alleged sexual harassment, stating that "he don't do nothing but make sexual com [sic], comments, [unknown] anyway." (Document Number 27-7 at 4.) When the Human Resource Manager asked for an example of the comments, Hinton replied, "Um, telling you you're fine, an [sic] um, just, just, just stuff, you know?" Id. There is no reference in this conversation about her alleged January 25, 2006, telephonic complaint to the Human Resource Manager about Clincy's alleged sexual harassment. Furthermore, in the record there is no transcription of her January 25, 2006, telephone conversation with the Human Resource Manager and any alleged complaints she may

have made about Clincy's behavior at that time.

When questioned during the course of her deposition, Hinton stated that the transcript of the conversation between her and the Human Resource Manager was incomplete. She stated that she thought she "told [the Human Resource Manager] something about he said something about my behind or something. It was more than just that in that part there." (Hinton Transcript at 64:16-19; Document Number 27-2 at 8.) She could not, however, remember anything else that was missing from the transcript of the conversation, and stated that she "didn't go into details" during the conversation. (Hinton Transcript at 64:21; Document Number 27-2 at 8.) During her deposition, she also stated that Clincy talked to her and other female employees about oral sex, and that he allegedly offered to pay her and other females for it. (Hinton Transcript at 80:17-18, 24-25; Document Number 27-2 at 9.) Hinton admitted, however, that she did not inform the EEOC or Eagle One's Human Resource Manager of these alleged comments. (Hinton Transcript at 81:17-18, 24-25; Document Number 27-2 at 9.) Hinton described other conduct by Clincy during her deposition, admitting that the "talk [by Clincy]....didn't bother me. But when he forced me repeatedly to brush up against him, that's what aggravate[d] me. That's direct and physical." (Hinton Transcript at 96:10-12, 24-25; Document Number 27-2 at 12.) In her deposition testimony, as attached to the summary judgment motion, she fails to give dates on which this alleged conduct occurred or give any approximation of its frequency during the two to four week period she worked under the direct supervision of Clincy.

The Defendants argue that the Plaintiff cannot establish a *prima facie* case of harassment because she cannot establish that the harassment affected a term, condition , or privilege of employment. That is, the Defendants argue that the alleged sexual harassment was not

sufficiently severe as to alter the conditions of employment and create an abusive working environment. The undersigned agrees. Even if one accepts as true all of her allegations, under the totality of the circumstances, these alleged incidents do not rise to the level required to create a hostile work environment. Plaintiff admits that his comments did not bother her. (Hinton Deposition Transcript, Document Number 27-2 at 12.) She stated, instead, that she was offended when Clincy forced her to repeatedly brush up against him as she passed by him. (Id.) Although the court does not condone such alleged acts by Clincy, neither can the Court conclude that these alleged acts, which occurred for at most one month and whose frequency is not alleged, approach the level of conduct that has been held actionable in the Fifth Circuit. See McKinnis v. Crescent Guardian, Inc., 189 Fed. Appx. 307, 310 (5th Cir. 2006)(unreported)(holding that chronic unwanted touching for a year resulting in plaintiff's resignation qualified as severe and pervasive); Harvill v. Westward Commc'ns, LLC, 433 F.3d 428, 435-36 (5th Cir. 2005)(holding that unwanted touching of plaintiff's breasts and buttocks over a seven-month period, despite her protests on every occasion, qualified the behavior as sufficiently severe or pervasive). Instead, the Court finds that these acts fall into the "boorish and offensive" category of unactionable conduct. Moreover, the Court finds it significant that Hinton neither reported the alleged physical contacts nor the severity of the comments to the Defendant's Human Resource Manager when given the opportunity. See Gibson, 264 Fed. Appx. at 401. Furthermore, even if Hinton discussed Clincy's alleged unwanted advances with co-workers, such actions are not enough to put an employer on notice that it should address Clincy's behavior.[3] Williams v. Barnhill's

---

[3]See Transcript, Document Number 27-2 at 9 (describing Plaintiff's discussions with co-workers about Clincy's alleged behavior).

Buffet, Inc., 290 Fed.Appx. 759, 763 (C.A.5 (Miss.),2008). Employing these standards, the Court concludes that a reasonable jury would not find Clincy's conduct was sufficiently severe or pervasive to alter a term or condition of Hinton's employment. Therefore, even when viewing the evidence in the light most favorable to Hinton, she fails to raise a genuine issue of material fact regarding the elements of her hostile work environment claim.

Alternatively, even when considering her case as a "quid pro quo" claim, Hinton's claim fails. Even when one considers the facts in the light most favorable to Hinton, she cannot show a nexus between her firing (the "tangible employment action") and her acceptance or rejection of Clincy's alleged sexual harassment. See Casiano, 213 F.3d at 283.

For the reasons set forth above, the Defendants are entitled to summary judgment on Plaintiff's claim of sexual harassment.[4]

### B. Retaliation

Plaintiff claims that the Defendant retaliated against her for complaining of Clincy's alleged unwanted sexual advances. To establish a *prima facie* case of retaliation, Hinton must show that:

(1) she participated in an activity protected by Title VII;

(2) her employer took an adverse employment action against her; and

(3) a causal connection exists between the protected activity and the materially adverse action.

---

[4]Because the Court has concluded that the Plaintiff has failed to make a *prima facie* case of hostile work environment harassment, it does not reach the issue of whether the Defendants have established an affirmative defense as set forth in Faragher v. city of Boca Raton, 524 U.S. 775, 807 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 484 (5th Cir. 2008). In this action, the Court finds that the Defendants are entitled to summary judgment because the Plaintiff has failed to establish her *prima facie* case. Although the Plaintiff meets the first two prongs, she fails to establish any causal connection between her complaints about Clincy to the Human Resources Manager and her firing. According to her deposition, she assumes that she was terminated on February 2, 2006, because she made the complaint to the Human Resources Manager on January 30, 2006. (Hinton Transcript at 62: 8-11; Document Number 27-2.) Plaintiff's subjective belief that she was fired because she complained to management about Clincy simply is not enough to defeat a motion for summary judgment. See Chandler v. MDOC, 2008 WL 2986956, *10 (S.D. Miss. July 30, 2008)(Guirola, J.). "Unsupported, conclusory speculation is insufficient to create a genuine issue of material fact." Williams v. Barnhill's Buffet, Inc., 290 Fed. Appx. 759, 762 (5th Cir. 2008)(citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(upholding the grant of summary judgment in an employment case pending before Hon. Keith Starrett, District Judge, Southern District of Mississippi).

Even if one assumes that she has established a prima facie case, her claim still fails, as the defendant has produced a nondiscriminatory reason for the adverse employment action. Aryain, 534 F.3d at 484. The affidavit of Malcomb Driskill, the Regional Operations Manager of the company and Hinton's superior, states that Driskill made the decision to terminate Hinton and did so without first discussing his decision with the Human Resource Manager. (Driskill Affidavit, Document Number 27-4 at 2.) Driskill states that Hinton's poor performance at her job within the ninety-day introductory period, despite counseling by Driskill, was the basis for his decision to fire her. Id. Moreover, Driskill states that he was unaware that Hinton had

complained to the Human Resource Manager until after he had terminated her. Id. Even Hinton expressed that she was concerned about being replaced and admitted that there was cause to terminate her because she made mistakes at her job. (Transcript, Document Number 27-7 at pp. 6-7.)

The Fifth Circuit has observed that "'the mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case. . . . Title VII's protection against retaliation does not permit EEO complainants to disregard work rules or job requirements.'" See id. (quoting Swanson v. Gen. Serv. Admin., 110 F.3d 1180, 1188 n.3 (5th Cir. 1997))(omission in original). As in Chandler, this court is left with only the Plaintiff's subjective belief that she was terminated after she verbally complained about Clincy to Eagle One's Human Resources Manager. Plaintiff's subjective belief is not enough to defeat a motion for summary judgment. Moreover, even if one finds that the Plaintiff has stated a *prima facie* case of retaliation, the Defendants have proffered a legitimate, non-discriminatory reason for her termination, which has not been rebutted by the Plaintiff. Accordingly, summary judgment is granted to the Defendants on this claim.

### C. Sex Discrimination

In her complaint and in her EEOC charge, the Plaintiff has alleged a claim of sex discrimination. To make out a *prima facie* case of discrimination, an employee must show that:

(1) she is a member of a protected class;

(2) she was qualified for the position she lost;

(3) she suffered an adverse employment action; and

(4) others similarly situated but outside the protected class were treated more favorably.

Crump v. Masonite Corp., 2008 WL 3200669 (S.D. Miss. Aug. 7, 2008)(Starrett, J.) The Fifth Circuit has held that "'a plaintiff must establish all four elements of the case in order to prove that she was treated differently.'" Id. (quoting Scales v. Slater, 181 F.3d 703, 709 (5th Cir. 1999)).

Even when the Court views the facts in the light most favorable to the Plaintiff, she fails to allege facts that would support a *prima facie* case of sex discrimination. Assuming she was a member of a protected class and that she suffered an adverse employment action by being terminated, she has failed to allege facts that would support the second and fourth prongs of the claim. She has failed to allege facts to support that she was qualified for the position that she lost, and she has further failed to allege facts to support the argument that others situated outside the class were treated more favorably. Thus, she has failed to establish two of the four required elements, and her claim must fail. Accordingly, the Defendants are entitled to summary judgment on this claim.

### D. Malicious Interference with Employee Relations

Plaintiff alleges a claim for malicious interference with employee relations. There is no such claim for "malicious interference with employment relations" in Mississippi. Crabb v. Itawamba County, 2005 WL 2648017 (N.D. Miss. Oct. 17, 2005)(Pepper, J.). Mississippi federal courts, however, have construed a "malicious interference with employment relations" claim as a claim for tortious interference with contractual relations. Stephen v. Winston County, 2008 WL 4813829, *8 (N.D. Miss. Nov. 4, 2008)(Aycock, J.) In order to state a claim for tortious interference with business relations, the plaintiff must prove the following elements:

(1) the acts were intentional and willful;

(2) the acts were calculated to cause damage to the plaintiffs in their lawful business;

(3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (which constitutes malice); and

(4) actual loss and damage resulted.

Crabb, 2005 WL 2648017 at *4 (quoting PDN, Inc. v. Loring, 843 So.2d 685, 688 (Miss. 2003)).

When reviewing this claim, the Court finds that the Plaintiff's claim cannot survive summary judgment. As to Eagle One, "[a] party to a contract cannot be charged with interfering with his own contract," therefore Plaintiff cannot maintain this claim against Eagle One. Id. When evaluating this claim against Clincy, the Court finds that she fails to allege any facts to support this claim. Although the Court must view the facts in the light most favorable to the Plaintiff, there are simply no facts alleged to support this claim. The Court simply cannot fabricate a claim where there is none. Moreover, any facts to support this claim would be based upon pure speculation by the Court because the Plaintiff fails to set forth any facts supporting this claim in her complaint. As stated before, "[u]nsupported, conclusory speculation is insufficient to create a genuine issue of material fact." Williams v. Barnhill's Buffet, Inc., 290 Fed. Appx. at 762. Accordingly, the Defendants are entitled to summary judgment as to this claim.

### E. Intentional Infliction of Mental Distress

The Defendant Eagle One has moved for summary judgment on the Plaintiff's intentional infliction of mental distress claim, arguing that it is time-barred. According to the Defendants, Hinton's claim for intentional infliction of emotional distress is barred pursuant to its one year statute of limitation. See Southern v. Mississippi State Hosp., 853 So.2d 1212, 1214-16 (Miss. 2003); Miss. Code Ann. § 15-1-35; see also Bellum v. PCE Constructors, Inc., 407 F.3d 734, 741

-17-

(5th Cir. 2005)(analyzing statute of limitations for intentional infliction of emotional distress claim pursuant to Miss. Code Ann. § 15-1-35). Plaintiff was terminated on January 31, 2006, and filed her complaint in this court on December 12, 2007, over one year after any claim accrued. Accordingly, because she failed to file a complaint within the one year limitations period, this claim is time-barred and must be dismissed.

### F. Negligence

The Defendant Eagle One has moved for summary judgment for any claims of negligence against Clincy which may be imputed to Eagle One based upon the *respondeat superior* theory. In her complaint, Plaintiff makes a broad claim of negligence against Clincy without any supporting facts. Eagle One argues that the Plaintiff has failed to allege even one specific act of negligent conduct by Clincy. Asserting that Plaintiff's claims against Eagle One are based upon Clincy's *intentional* conduct, Eagle One argues that any intentional conduct by Clincy was not performed while acting within the scope of his employment and, therefore, cannot be imputed to Defendant Eagle One. The undersigned agrees. "If an employee 'deviates or departs from his work to accomplish some purpose of his own not connected with his employment – goes on a "frolic of his own" – the relation of master and servant is thereby temporarily suspended,' and the employer is not vicariously liable." Children's Med. Group, P.A. v. Phillips, 940 So.2d 931, 935 (Miss. 2006). Accordingly, the Defendants are entitled to summary judgment on this claim.

V.  Conclusion

For the reasons discussed above, the Court finds that the Defendants are entitled to summary judgment as to all claims of the Plaintiff.   Accordingly, pursuant to Rule 58 of the Federal Rules of Civil Procedure, a separate judgment will be entered, and this complaint will be dismissed with prejudice.

The Motion to Withdraw  and to Stay by Plaintiff's counsel is denied.

SO ORDERED AND ADJUDGED, this the   20th    day of July, 2009.


                         s/ James C. Sumner
                         UNITED STATES MAGISTRATE JUDGE